IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

MARTHA ROSALES,

    Plaintiff,

v.

WALMART, INC,

    Defendants.

---

**VERIFIED COMPLAINT AND JURY DEMAND**

---

Plaintiff, MARTHA ROSALES, by and through her attorney of record, John W. McKendree, OFFICES OF JOHN W. McKENDREE, LAWYER & CONSULTANT, hereby respectfully submits this VERIFIED COMPLAINT AND JURY DEMAND and alleges and avers as follows:

## JURISDICTION, VENUE and PARTIE

1.    Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1983, as well as the Fourteenth Amendment to the United States Constitution, based upon the fact that Defendant conducts and transacts business within the State of Colorado, the events which give rise to this Verified Complaint and Jury Demand occurred within the State of Colorado, and Plaintiff suffered injuries, damages and losses as a result of Defendant's unlawful and discriminatory conduct as alleged herein, in the State of Colorado.

2.    Venue is proper in the District of Colorado since the events at issue all occurred within the District of Colorado pursuant to 28 U.S.C. §1391, *et seq*.

3. Plaintiff, Martha Rosales [Hereafter, "Plaintiff"] currently employed by Defendant, Walmart, Inc., is a resident of the State of Colorado and currently resides at 2986 S. Laredo Cir. Aurora, CO 80013.

4. Defendant Walmart, Inc. [Hereafter, "Defendant"] is the largest retailer in the world, with approximately 10,500 stores and clubs under 48 banners in 24 countries, including Walmart Store #1689, located at 5650 S Chambers Rd, Aurora, CO 80015, in which the Plaintiff is employed and performs her duties.

5. Plaintiff's suit is for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101.

## BACKGROUND AND GENERAL ALLEGATIONS

6. Plaintiff incorporates herein by reference each and every allegation contained in ¶¶1-5 of this Verified Complaint and Jury Demand.

7. Plaintiff began her employment with Defendant at Store #1689, as a Cashier on September 27, 2006, and throughout the years, held several positions with the company until ultimately being promoted on or about October 31, 2016, to Assistant Store Manager for Store #1689.

8. On April 25, 2019, while performing Plaintiff's regular job duties at store #1689, Plaintiff was notified via walkie-talkie of a Code White in the Pharmacy. Immediately, the Plaintiff approached the Pharmacy to assist with the matter[1].

---

[1] Upon her arrival, Plaintiff observed an older gentleman experiencing a seizure, wherein the Plaintiff kneeled down to make sure he was not banging his head on the sharp corners in the Pharmacy; also assisting in the incident was Pharmacy Associate, Tracey [Last Name Unknown], who was lightly holding the gentleman's legs. While the Plaintiff was attempting to calm the gentleman down, he adamantly struggled to stand up from the floor; in doing so, the gentleman grabbed the Plaintiff by her vest, hips and shoulders, weighing her down and using her as leverage to stand; Plaintiff was unable to gain stability and yelled, "I can't hold him. Please bring a bench or something so I can set him down." Finally a bench was brought over and the gentleman was taken care of and monitored until the paramedics arrived.

10. Immediately after the Code White was announced, Plaintiff was notified of a Code Adam; coincidently, the missing child was related to the gentleman involved in the Code White mentioned *supra*.

11. After attending to both situations, the Plaintiff was able to gather herself and notified co-manager, Jim Serreno [Hereafter, "Serreno"] that something wasn't right, and further stated that since the ambulance arrived for the gentleman in Pharmacy, her left knee and ankle were pulsating and that she was in extreme pain.

12. Mr. Serreno instructed the Plaintiff to see Manager, Quanisha Davis [Hereafter, "Davis"] to fill out a claim; although a first report of incident was filled out, it was not entered into the system until 7 days later, after the Plaintiff notified Management that she needed to seek medical treatment.

13. On May 1, 2020, the Plaintiff spoke with Manager, Scott Stiverson ["Hereafter, "Stiverson"], who told her to, "Get with Assistant Manager, Quanisha [Davis] and have her enter the incident into the system." Initially, Ms. Davis stated, "I have no time for this- do I need to do it right now?" To which the Plaintiff responded by saying, "Yes, I need to go to the doctor." Although in extreme pain, the Plaintiff drove herself to the doctor and did not miss any time off work initially.

14. Once the Plaintiff was able to see a doctor, it was determined that she could return to work as the Assistant Store Manager, with work restrictions, which the Defendant accommodated from May 2019 through September 2019.

15. On October 4, 2019, the Plaintiff underwent extensive surgery to repair her left ankle which was causing the extreme pain she experiencing as a result of the incident on April 25, 2019.

16. Thereafter, the Plaintiff required further accomodations as her doctor indicated she could only work 5 hours a day.

17. During the pendency of Plaintiff's Worker's Compensation Claim for the injuries of April 25, 2019, Plaintiff continued to work as the Assistant Manager with the same work restrictions which her doctor's opined at all times material.

18. Throughout the period of time since the incident in April 2019, the Plaintiff has been discriminatorily harassed by other members of management wherein they would make hand gestures as she walked by on her crutch; making demeaning comments like, "I know your hurt, but you can still use your head."

19. From January 2020 through early September 2020, Plaintiff was reasonably accommodated and performed her job duties as Assistant Store Manager with the work restrictions in place until on or about August 27, 2020, wherein the Plaintiff submitted her Return to Work Certification, including current work restrictions and accommodation request documentation indicating that the Plaintiff had reached Medical Maximum Improvement in her on the job injury claims resulting from the incident of April 25, 2019.

20. Untill receipt of the Return to Work Certification in August 2020, Plaintiff professionally and competently performed services in the interest of the Defendant under the then work restrictions.

21. After Plaintiff received her Return to Work Certification, Defendant made the discriminatory and wrongful decision to place the Plaintiff on a 12 week Leave pending an alternative accomodations reassignment.

22. Defendants' decision to discriminatorily place the Plaintiff on a 12 week leave pending an alternative accomodations reassignment, had a discriminatory impact by application

4

of such alternative accomodations reassignment, procedure which had a discriminatory effect in violation of the Americans with Disability Act of 1990, 42 U.S.C. § 12101.

23. The Plaintiff was paid her full time salary up until the date she reached maximum medical improvement (MMI).

24. Plaintiff understood from her years of working and experience at Walmart that in the event she was injured as a managerial employee, that she would be entailed to remain at work with her salary intact.

25. Plaintiff's job description itemized certain tasks which, if she has surgery at her expense to further repair her ankle, she would be able to return to work without restrictions.

26. A Health Screener position opened up according to Defendant at its Store #5137 and the Plaintiff, when offered the position, was forcibly required to accept it in light of the discriminatory impact of the Defendant's application of its policies.

27. On or about May 24, 2021, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission [EEOC], Charge Number 541-2021-00781, in which she claimed Disability Discrimination,

> "I was hired on September 23, 2006 as a cashier, and on October 31, 2018, I was promoted to Assistant Manager. In April 2019, I suffered an on the job injury, and in October 4, 2019, I had surgery to repair the damage caused by the injury. After the surgery, I returned to work with permanent restrictions…In January 2020, I was provided with a reasonable accommodation working to assist Human Resources.
>
> In September 2020, I was notified…to take twelve (12) weeks of leave. During the twelve (12) weeks of STD the company looked for other positions that could accommodate my restrictions. I was reinstated to work as Screener/Cashier, a position that meets my medical restrictions."

28. On May 28, 2021, the Director of the EEOC issued its Notice of Right to Sue (Issued on Request) indicating that the EEOC was terminating the processing of the charge and

5

noting that the Director has "determined that is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the date of the filing of this charge."

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
### Disability Discrimination in Violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101

29. Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 28 of this Verified Complaint and Jury Demand.

30. Plaintiff suffers from permanent physical impairments as a result of a work related injury and is therefore disabled and a protected member under the Americas with Disabilities Act (ADA).

31. Defendant took adverse employment action against the Plaintiff with respect to her compensation, terms, conditions, and privileges of employment, ultimately resulting in her demotion from Assistant Manager to Health Screener; which, but for her disability, would not have taken place as a consequence of its policies which desperately impact Plaintiff and others with such disabilities.

32. Defendant made the discriminatory decision to limit and segregate the Plaintiff from performing her duties as an Assistant Manager in a way which deprived the Plaintiff of employment opportunities, adversely affecting her status as an employee, which, but for her disability, would not have taken place.

33. Defendants accommodated the Plaintiff as an Assistant Manager from April 2019 until August 2020, when they made the discriminatory decision to discontinue providing Plaintiff with reasonable accomodations even though Plaintiff professionally and competently performed services in the interest of the Defendant under the then work restrictions.

34. Defendants intentionally and maliciously discriminated against the Plaintiff when they subjected her to differential treatment based on her protected statuses.

35. As a direct and proximal result of Defendant's intentional disability discrimination, Plaintiff suffers and continues to suffer injury including, but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering, including psychological damage.

36. As a direct and proximal result of Defendant's intentional disability discrimination conduct, Plaintiff also suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits, diminished opportunities for career advancement, damage to her reputation and damage to her re-employment opportunities; and for such other and further relief as the Court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment in her favor and against the Defendant as follows:

(a) On Plaintiff's First Claim for Relief for Disability Discrimination in Violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101; in an amount to be determined at trial.

## JURY DEMAND

Plaintiff, Martha Rosales, respectfully demands a Trial by Jury on all issues presented herein.

Respectfully submitted this 29th day of July 2021.

*s/s John W. McKendree*
John W, McKendree, #1209
OFFICES OF JOHN W. McKENDREE,
LAWYER & CONSULTANT
1287 S. 8th Ave, I-172

Brighton, CO 80601
(303) 618-8780
jwm@mckendreelaw.com

In accordance with C.R.C.P. 121§ 1-26(7), a printed copy of this document with original signatures is maintained by the filing part and will be made available for inspection by other parties or the Court upon request.

**Plaintiff's Address: 2986 S. Laredo Cir., Aurora, Co. 80013**

### VERIFICATION

STATE OF COLORADO              )

                               ) s/s

CITY AND COUNTY OF Arapahoe )

I, Martha Rosales, have had this Verified Complaint and Jury Demand read aloud to me, and I certify that the information contained herein is true and correct and to the best of my knowledge, information and belief.

s/ Martha Rosales
Martha Rosales, Plaintiff

Subscribed and sworn to before me this 30 day of July, 2021, by Martha Rosales.

Witness my hand and official seal.

s/ M. McGaughy
Notary Public

My Commission Expires: 06·03·2023 {{SEAL}}

CHARLENE MCGAUGHY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20114028635
MY COMMISSION EXPIRES 06/03/2023

8